**Ann WEBER and Gary J. Weber, Plaintiffs-Appellants,**

**v.**

**Elizabeth DELL, Officer Janssen Rembert, Investigator Michael Ciminelli, Sgt. R. Hare, Officer Sue Shannon, Officers John Doe, Jane Doe, and other unidentified police officers, the City of Rochester Police Department, the City of Rochester and the County of Monroe, and Andrew P. Meloni, Monroe County Sheriff, Defendants-Appellees.**

**No. 1329, Docket 86–7214.**

United States Court of Appeals, Second Circuit.

Argued May 19, 1986.

Decided Nov. 6, 1986.

Stephen G. Schwarz, Rochester, N.Y. (Faraci, Guadagnino, Lange & Johns, Rochester, N.Y., of counsel), for plaintiffs-appellants.

Nira T. Kermisch, Asst. Monroe Co. Atty., Rochester, N.Y. (Charles R. Valenza, Monroe Co. Atty., Charles H. Miller, III, Asst. Monroe Co. Atty., of counsel), for defendants-appellees.

William D. Eggers, Rochester, N.Y. (Michael D. Norris, Arundhati Khanwalker, New York Civil Liberties Union, Genesee Valley Chapter, Rochester, N.Y., Richard Emery, New York Civil Liberties Union, New York City, of counsel), for amicus curiae New York Civil Liberties Union.

Before OAKES, MESKILL and MAHONEY, Circuit Judges.

MAHONEY, Circuit Judge:

This case presents the constitutionality of a jail policy authorizing strip/body cavity searches of people arrested and booked into the jail, regardless of whether they are reasonably suspected of concealing contraband. Plaintiff Ann Weber, who was subjected to such a search after her arrest on misdemeanor charges, and her

husband Gary Weber, who assertedly suffered personal injuries arising from his arrest on the same occasion, brought this action alleging state and federal claims against the City of Rochester, the County of Monroe (the "County"), several Rochester police officers, an employee of the Rochester Police Department, and the Monroe County Sheriff (the "Sheriff"). We consider [1] plaintiffs' appeal from the denial of their motion for partial summary judgment on the issue of the liability of the County and the Sheriff under 42 U.S.C. § 1983 for the search of Ann Weber, the dismissal of the complaint as to those defendants, and the grant of summary judgment in their favor. Because we conclude that the search violated Mrs. Weber's rights under the Fourth Amendment, we reverse the district court's decision and direct the entry of partial summary judgment in favor of appellant Ann Weber as to the liability of the County and the Sheriff under section 1983 for the challenged strip/body cavity search.[2]

## BACKGROUND

The following rendition of the facts has been gleaned from the complaint, affidavits submitted below and transcripts of depositions conducted below, and may contain factual matters in dispute between the parties to this litigation.[3] No such matters preclude our summary disposition of the issues before us, however, since the County and the Sheriff concede that pursuant to jail policy a jail employee undertook a strip/body cavity search of Mrs. Weber

after her arrest on misdemeanor charges in the absence of any ground other than her status as an arrested person for concluding that she was likely to be concealing contraband. The remainder of this strange story we include by way of background.

On June 18, 1983, Ann and Gary Weber attended their daughter's wedding and reception, then hosted a party for some of the wedding guests in their home. The night of celebration must have lost some of its savor for the Webers even before any of the defendants appeared on the scene; in quest of cigarettes, in the early morning hours, the Webers' son left the party with a friend and was assaulted by a man wielding a baseball bat outside an all-night variety store. The son and his friend escaped bodily injury by repairing to their car, but they returned to the Webers' home with a battered vehicle, the assailant having smashed it repeatedly with the bat as they drove away. Upon being apprised by her son of the assault, Mrs. Weber called the Rochester Police Department and reported the incident to a dispatcher.

Shortly thereafter, the Webers' son left with several other family members and guests to seek out his assailant. Approximately half an hour after she made the first report, Mrs. Weber called the Police Department a second time and asked what she needed to do to procure police assistance. The dispatcher who spoke with Mrs. Weber already knew about the incident, since she had taken the first call as well and had reported the attack as an episode of "malicious mischief." She allegedly told

1. An appropriate order was entered below pursuant to Fed.R.Civ.P. 54(b) directing the entry of an appealable final judgment with respect to the matters considered in this opinion.

2. This court has the power in appropriate circumstances to reverse a district court's grant of summary judgment and to grant summary judgment for the nonmoving party. See Ithaca College v. NLRB, 623 F.2d 224, 229 (2d Cir.), cert. denied, 449 U.S. 975, 101 S.Ct. 386, 66 L.Ed.2d 237 (1980); Abrams v. Occidental Petroleum Corp., 450 F.2d 157, 165–66 (2d Cir.1971), aff'd sub nom. Kern County Land Co. v. Occidental Petroleum Corp., 411 U.S. 582, 93 S.Ct. 1736, 36 L.Ed.2d 503 (1973); 6 Moore's Federal Practice

¶ 56.12. It may do so a fortiori where, as here, the adversary parties have moved for summary judgment. Id. ¶ 56.13, at 56–348 to 349. In view of the conclusions expressed herein, no purpose would be served by remanding for further litigation as to liability concerning the questions decided in this opinion.

3. The only claims pleaded against the County and the Sheriff are the violation of 42 U.S.C. § 1983 described earlier herein, and a violation of 42 U.S.C. § 1985 resulting from an alleged agreement between the County, the Sheriff and the City of Rochester to effectuate the policy of strip/body cavity searches.

Mrs. Weber that emergency police assistance would arrive only if Mrs. Weber were to report a shooting. Mrs. Weber—in an agitated state, we suppose—complied. The dispatcher then informed the police that Mrs. Weber had reported a shooting, but that it was probably a false and illegal report.

The police then began to arrive at the Webers' home. According to the plaintiffs, the police placed Mrs. Weber under arrest for a false report, whereupon she retreated into her home with the police in hot pursuit. Mr. Weber exchanged words with the officers, still more officers arrived, and all entered the Webers' home over Mr. Weber's protest. Mr. Weber was placed in a police car after suffering injuries, he alleges, at the hands of the officers.

There ensued some movement of officers and Webers throughout the Weber home. The Webers claimed later that the officers had beat them without provocation; the officers claimed that the Webers had resisted arrest. In either event, the officers eventually carried Mrs. Weber out of her house and transported her, still protesting, still dressed in formal wedding attire, now encumbered with handcuffs, to the Monroe County Jail, where they charged her with the misdemeanor offenses of falsely reporting an incident and resisting arrest.

After booking, Mrs. Weber was photographed and fingerprinted, then taken to a vacant cell. There the occurrences that gave rise to the issues before us took place. Pursuant to a Monroe County Jail policy providing for strip/body cavity searches of all arrestees, Mrs. Weber was required to remove all her clothing and to expose her body cavities for visual inspection. She won her release half an hour later, after her newly wed daughter arrived at the jail and posted bail. Mr. Weber had meanwhile been charged with obstruction of govern-

mental administration and resisting arrest, then taken to a hospital and treated for wounds to his face.

After trial and acquittal of all charges in Rochester City Court, the Webers brought this action challenging *inter alia* the strip/body cavity search of Mrs. Weber, on the ground that jail employees had performed that search with no reasonable suspicion that Mrs. Weber was carrying weapons or other contraband, in violation of her rights under the Fourth Amendment.[4] The County and Sheriff moved for summary judgment. The Webers cross-moved for partial summary judgment against the County and the Sheriff on the issue of their liability under 42 U.S.C. § 1983 for the strip/body cavity search of Mrs. Weber. Not reaching the immunity or state law defenses raised by those defendants, the court below granted them summary judgment on the ground that the search of Mrs. Weber's person and body cavities did not violate her constitutional rights.

We reverse.

## DISCUSSION

### I. *The Constitutionality of the Search Policy*

■ According to the Sheriff, the jail employees conducted the search of Mrs. Weber pursuant to a Monroe County Jail policy calling for strip/body cavity searches of all arrested persons other than those placed in "holding cells," which are the cells in which arrestees are sometimes placed when their release on bail is imminent. In deciding that such a policy is constitutional, the district court held that "once a person becomes a prison inmate, he or she loses any Fourth Amendment protection from strip/body cavity searches if prison administrators have reasonable grounds for concluding that the inmate is

---

4. The defendants ground their defense on the argument that a reasonable suspicion of the particular arrestee is unnecessary to justify strip/body cavity searches. They do not seriously argue that they harbored any such suspicion of Mrs. Weber—except for one small suggestion raised by defense counsel in her brief and at oral argument. We reject as ridiculous the suggestion that, for lack of a purse or pockets, a woman dressed in a formal evening gown is in fact more likely than a man or a woman dressed in casual attire to be concealing contraband in her body cavities.

in a position to be carrying contraband." *Weber v. Dell*, 630 F.Supp. 255, 259 (W.D. N.Y.1986). It is not clear to us precisely how one analyzes whether a recently arrested inmate is in a *position* to be carrying contraband, as opposed to the likelihood, under the circumstances attending the arrest, that he or she is in fact carrying it; applying the former standard, in any event, the district court found a reasonable ground for subjecting Mrs. Weber to such searches in the Sheriff's "rough estimates" that seventy percent of all arrestees carry contraband. *Id.*

In setting forth its analysis, the court expressly rejected holdings in other circuits requiring some reasonable suspicion, founded on the characteristics of the particular arrestee or arrest or the nature of the crime with which he or she is charged, to justify such searches. Instead, the court based its own analysis directly on its reading of *Bell v. Wolfish*, 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), and *Block v. Rutherford*, 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984). The court decided that *Block* added a "gloss" to *Wolfish*, and that together the cases stand for the proposition that "a district court should not substitute its view of the proper administration of a jail" for that of the jail officials. *Weber v. Dell*, 630 F.Supp. at 258.[5] We must agree with Mrs. Weber that the district court misread *Wolfish* and read *Block* far too broadly. We accordingly adopt the reasonable suspicion standard that governs in other circuits, which we think *Wolfish* suggests and *Block* leaves undisturbed.

We turn, then, to an examination of those cases. In the portion of *Bell v. Wolfish* that applies directly to the issue before us, the Supreme Court held that probable cause is not necessary to justify routine strip/body cavity searches of arraigned pre-trial detainees after those inmates have had contact with visitors from outside the institution. Instead, the "test of reasonableness" requires a "balancing of the need for the particular search against the invasion of personal rights that the search entails." *Id.*, 441 U.S. at 559, 99 S.Ct. at 1884. In the *Wolfish* setting, that test required the balancing of "the significant and legitimate security interests of the inmates." *Id.* at 560, 99 S.Ct. at 1885. In concluding that the security interests of the prison in undertaking strip/body cavity searches after "contact" visits outweighed the privacy interests of the inmates—prisoners who had already been arraigned, had failed to make bail, and had presumably chosen to receive visitors and to enjoy physical contact with them—the Court recognized the need for "mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application." *Id.* at 546, 99 S.Ct. at 1878 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 555, 94 S.Ct. 2963, 2974, 41 L.Ed.2d 935 (1974)). It did not, however, read out of the Constitution the provision of general application that a search be justified as reasonable under the circumstances. The imposition of a standard short of probable cause in determining the balance of interests at stake in *Wolfish* in no way dispensed with that requirement.

Nor did *Block v. Rutherford* free prison officials from all Fourth Amendment constraints. A Fourteenth Amendment case, *Block* held that pre-trial detainees were not entitled as a matter of substantive due process to receive contact visits or to observe prison officials' searches of their cells. *Block* indeed emphasized the administrative and security needs of prisons and the propriety of deference to prison officials' decisions; it balanced those considerations, however, not against the interest in avoiding the intrusions of strip searches and body cavity searches, but against the

---

5. The court below also adverted, 630 F.Supp. at 258, to *Whitley v. Albers,* —— U.S. ——, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986), as a recent Supreme Court expression of the deference to be accorded prison administrators with respect to security matters. Indeed it is, but in a context (an alleged infringement of Eighth Amendment rights when a prisoner was shot during a prison riot) too remote to be of much assistance here.

alleged substantive due process rights to receive visits in prisons unimpeded by glass walls and to watch while officials engaged in concededly permissible searches of prison cells. Surely, any hypothetical "privacy"-type interest at stake in the latter contexts would be of a lower order than the interest in avoiding strip/body cavity searches. Furthermore, the *Block* holding expressly applies to detainees—"by definition persons unable to meet bail," many of whom are "awaiting trial for serious, violent offenses" and "have prior criminal convictions." 468 U.S. at 586, 104 S.Ct. at 3232.

An examination of cases from other circuits supports our view that *Block* and *Wolfish* do not suggest, much less require, the result reached here. In finding the search of Mrs. Weber constitutional, the district court below discounted ten opinions from seven circuits that succeeded *Wolfish* and "refused to condone strip/body cavity searches of *all* arrestees entering a jail." 630 F.Supp. at 259 (emphasis in original).[6] All but one of these cases held the particular search at issue unconstitutional. *Dufrin v. Spreen,* 712 F.2d 1084 (6th Cir.1983), the exception, sanctioned the strip/body cavity search of a woman formally charged with a violent felony. Furthermore, four of these cases were decided after *Block,*[7] and thus presumably took into account the gloss that the district court here found *Block* added to *Wolfish.* Thus, if there could be any doubt that the balance of interests struck in *Block* does not dictate the result the court reached in this case, the law in other circuits shows that it does not. Indeed, even before the Supreme Court decided *Block,* five circuits had agreed that pre-trial detainees are not entitled to contact visits, *see Block,* 468 U.S. at 582 n. 6, 104 S.Ct. at 3231 n. 6; three of those—the Fourth, Seventh and Tenth Circuits—had held that policies permitting routine strip/body cavity searches of arrestees were, in contrast, unconstitutional. See *supra* note 6.

We note that at the end of the opinion below, the court seems to narrow its holding, observing that Monroe County Jail policy appears to subject arrestees to strip/body cavity searches only when the arrestees are unable to make bail immediately and, for reasons such as overcrowding, are moved from the holding cells in which they are initially placed into cells near arraigned inmates. 630 F.Supp. at

**6.** See *Jones v. Edwards,* 770 F.2d 739 (8th Cir. 1985) (strip/body cavity search of arrestee who refused to sign summons and became belligerent toward arresting officers was unconstitutional); *Stewart v. County of Lubbock,* 767 F.2d 153 (5th Cir.1985) (reasonable suspicion standard did not justify strip searches of persons arrested for misdemeanors punishable only by fine), *cert. denied,* —— U.S. ——, 106 S.Ct. 1378, 89 L.Ed.2d 604 (1986); *Levka v. City of Chicago,* 748 F.2d 421 (7th Cir.1984) (reviewing damage award for an unconstitutional strip/body cavity search); *Giles v. Ackerman,* 746 F.2d 614 (9th Cir.1984) (arrestees for traffic law violations and other minor offenses may be strip-searched only if reasonable suspicion standard is satisfied), *cert. denied,* 471 U.S. 1053, 105 S.Ct. 2114, 85 L.Ed.2d 479 (1985); *Hill v. Bogans,* 735 F.2d 391 (10th Cir.1984) (strip search of traffic offender was unconstitutional where no circumstances indicated that the offender might have been concealing contraband and the offense was not associated with such concealment); *Mary Beth G. v. City of Chicago,* 723 F.2d 1263 (7th Cir.1983) (policy calling for strip/body cavity searches of women arrested for misdemeanor offenses was unconstitutional); *Tikalsky v.*

*City of Chicago,* 687 F.2d 175 (7th Cir.1982) (strip/body cavity search of woman arrested for disorderly conduct violated her Fourth Amendment rights); *Logan v. Shealy,* 660 F.2d 1007 (4th Cir.1981) (strip search of DWI arrestee was unconstitutional), *cert. denied,* 455 U.S. 942, 102 S.Ct. 1435, 71 L.Ed.2d 653 (1982); *Tinetti v. Wittke,* 479 F.Supp. 486 (E.D.Wis.1979) (probable cause was necessary to justify strip searches for non-misdemeanor traffic offenses), *aff'd,* 620 F.2d 160 (7th Cir.1980) (per curiam); *cf. Dufrin v. Spreen,* 712 F.2d 1084 (6th Cir.1983) (strip/body cavity search of arrestee charged with felonious assault was distinguished from cases in which minor offenders were subjected to such searches). All of these cases except *Levka v. City of Chicago* and *Tinetti v. Wittke* specifically considered and applied *Bell v. Wolfish.*

**7.** See *Jones v. Edwards; Stewart v. County of Lubbock; Levka v. City of Chicago;* and *Giles v. Ackerman; see also Ward v. County of San Diego,* 783 F.2d 1385 (9th Cir.1986) (reaffirming that reasonable suspicion is required in Ninth Circuit to justify strip/body cavity search of arrestee).

261. It is not clear from the record that the jail itself so characterizes its policy or that it followed such a policy in searching Mrs. Weber; she stated in her affidavit that no one asked her if she could make bail and that the jail was not crowded during her stay. The presence of such disputed matters should have precluded the grant of summary judgment in favor of the defendants if the court intended to uphold the policy only as restated and narrowed. Furthermore, the court relied on incompetent affidavits and facts that would be inadmissible as evidence, see Fed.R.Civ.P. 56(e) and 32(a), such as the Sheriff's assertion that seventy percent of arrestees carry contraband into the jail, a conclusory estimate based neither on personal observation nor on an analysis of the jail's records. See Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir.1980).

We find it unnecessary to remand for findings on those issues, however, because we believe that even the more narrowly drawn policy would be unconstitutional and that the Sheriff's assertion, if substantiated, would still not provide that "particularized suspicion," see United States v. Montoya De Hernandez, — U.S. —, —, 105 S.Ct. 3304, 3310, 87 L.Ed.2d 381 (1985), arising either from the nature of the charge or specific circumstances relating to the arrestee and/or the arrest, which the law requires for so intrusive and demeaning an investigative procedure as a strip/body cavity search. See also United States v. Ogberaha, 771 F.2d 655 (2d Cir. 1985); cf. Mary Beth G. v. City of Chicago, 723 F.2d 1263, 1272–73 (7th Cir.1983) (detailed statistical analysis did not establish justification for blanket strip/body cavity searches of arrested misdemeanants where contraband was found only on women charged with prostitution, narcotics violations, or assault). We hold that the Fourth Amendment precludes prison officials from performing strip/body cavity searches of arrestees charged with misdemeanors or other minor offenses unless the officials have a reasonable suspicion that the arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest.

## II. The Liability of the County

█ In light of its disposition of the Fourth Amendment issue, the district court did not reach the question whether the County could be held liable for a search conducted by Monroe County Jail employees if that search was unreasonable. Defendants argue that the County cannot be held liable, citing the Constitution of the State of New York,[8] Barr v. County of Albany, 50 N.Y.2d 247, 406 N.E.2d 481, 428 N.Y.S.2d 665 (1980), and Wilson v. Sponable, 81 A.D.2d 1, 439 N.Y.S.2d 549 (1981).

Those authorities do not stand for the proposition that a county cannot be held liable for unlawful acts that the county itself commits when it establishes or implements unlawful policies; rather, they hold that a county is not vicariously liable for the tortious acts of a sheriff. Under that interpretation, Barr and Wilson are perfectly consistent with Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), in which the Supreme Court held that a municipality is a person and can incur section 1983 liability as a consequence of policies it promulgates even though it cannot incur such liability under a respondeat superior theory. In any event, immunity from liability under section 1983 is not a question of state law but of federal law. " 'A construction of the federal statute which permitted a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced.' " Martinez v. California, 444 U.S. 277, 284 n. 8, 100 S.Ct. 553, 558 n. 8, 62 L.Ed.2d 481 (1980) (quoting Hampton v.

---

**8.** Article XIII, § 13(a) of the New York Constitution provides that "the county shall never be made responsible for the acts of the sheriff."

*City of Chicago*, 484 F.2d 602, 607 (7th Cir.1973), *cert. denied*, 415 U.S. 917, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974)) (citation omitted).

The test for county liability here, then, is whether the decision to subject arrestees to strip/body cavity searches without regard to the specific characteristics of the arrestees or arrests or the nature of the crimes with which they are charged "may fairly be said to represent official policy." *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037. We believe that it can. As the Sheriff testified in his deposition, he was the "policy maker for this division ... as it relates to strip search." By ordering such searches, the Sheriff established county jail policy, and defendants offer no authority for the argument that, as the highest ranking law enforcement official in the County, he was not entitled to do so. *See Pembaur v. City of Cincinnati*, — U.S. —, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (where municipal official is responsible for establishing governmental policy respecting challenged activity, municipal liability attaches); *Blackburn v. Snow*, 771 F.2d 556, 571 (1st Cir.1985) (where sheriff was responsible for promulgating security policies for correction facilities, "there could hardly be a clearer case of county liability" for damage caused by strip search rule).

In this connection, we reject defendants' argument that the Sheriff's policy is mandated by N.Y.Admin.Code tit. 9, § 75021.-1(a), which provides that "[b]efore being placed in a cell or detention room, the clothing and person of each prisoner shall be thoroughly searched." The regulation does not on its face compel strip/body cavity searches; indeed, defense counsel conceded at oral argument before the district court that the Sheriff had interpreted the regulation in a manner not necessarily required by its terms. 630 F.Supp. at 257. The district court accordingly held that the "strip search policy *implemented by the*

*Sheriff* is constitutional." *Id.* at 257 (emphasis added). In view of our contrary determination as to the policy's constitutionality, the County is liable for the damage the policy caused.

### III. *The Sheriff's Claim to Immunity*

■ Defendants argue that because the search of Mrs. Weber did not violate "clearly established" constitutional rights at the time of search, the Sheriff is entitled to good-faith immunity under *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). In *Salahuddin v. Coughlin*, 781 F.2d 24 (2d Cir.1986), this court explained the *Harlow* test as follows: "The pertinent test in applying [the objective good-faith] defense is whether the federal law violated was clearly established, ... not whether a reasonable person would have known of the law." *Id.* at 27 (citations omitted). Although this question is perhaps closer than the others, we think that the law was clearly established and that the Sheriff is not entitled to the good-faith immunity defense. *See Jones v. Edwards*, 770 F.2d 739, 742 n. 4 (8th Cir. 1985).[9]

At least eleven circuit court decisions, three of them antedating the search in this case, hold similar policies unconstitutional. See *supra* notes 6 and 7, and cases there cited. In this circuit, although we have not directly ruled on the precise issue presented in this case, we have variously described "the indignities of a rectal search," *Sostre v. Preiser*, 519 F.2d 763, 764 (2d Cir.1975), as "insensitive, demeaning and stupid," *Sala v. County of Suffolk*, 604 F.2d 207, 211 (2d Cir.1979), *vacated and remanded*, 446 U.S. 903, 100 S.Ct. 1827, 64 L.Ed.2d 256 (1980), "degrading," and a "major invasion into privacy." *Security and Law Enforcement Employees v. Carey*, 737 F.2d 187, 208 (2d Cir.1984).[10] It may be true, as appellees argue, that there is not "one case which prohibited body cavity searches of

---

9. We note that even if the Sheriff were entitled to such a defense, it would not extend to the County. *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980).

10. We note that *Security and Law Enforcement Employees v. Carey* did not precede the events here litigated.

people [sic] charged with resisting arrest."[11] But Monroe County Jail policy is not restricted to such persons. In any event, a probable explanation for the absence of such cases is that other government authorities have sensibly abandoned or declined to establish policies calling for routine strip/body cavity searches of all persons resisting arrest. As we have noted, municipalities that have adopted similar policies, uniformly subjecting intoxicated traffic law offenders and other misdemeanants to such searches, have all seen those policies abrogated when challenged. *Securities and Law Enforcement Employees v. Carey*, which granted qualified immunity to correction officers who ordered unconstitutional strip/body cavity searches of their fellows, thus stands in contrast, because those officials "operated in an area in which the law was not charted clearly." *Id.* at 211.

## CONCLUSION

■ We recognize the need, when the intrusion of strip searches and body cavity searches is reasonably justifiable, to defer to the judgment of prison officials charged with preserving order and maintaining the security of detention facilities; such deference is sometimes appropriate even if in the judgment of the court less intrusive means to secure the prison and protect the safety of jailers and inmates might have been employed. Deference, however, is not a dispensation from the requirement under the Fourth Amendment that searches be reasonable. We conclude that a reasonable suspicion that an accused misdemeanant or other minor offender is concealing weapons or other contraband—suspicion based on the particular traits of the offender, the arrest and/or the crime charged—is necessary before subjecting

11. *Cf. Jones v. Edwards,* 770 F.2d 739, 741–42 (8th Cir.1985), and *Alberts v. City of New York,* 549 F.Supp. 227, 229 n. 2 (S.D.N.Y.1982).

12. *Compare Smith v. Montgomery County,* 643 F.Supp. 435 (D.Md.1986), holding that reasonable suspicion exists to strip search all felony arrestees, all temporary detainees arrested for misdemeanor offenses that involve weapons or

the arrestee to the indignities of a strip/body cavity search.[12] We also conclude on the facts of this case that the jail employee who undertook the search of Mrs. Weber pursuant to County policy, and that the Sheriff who promulgated that policy is not entitled to a good-faith immunity defense. We accordingly reverse the judgment below, and direct the entry of summary judgment in favor of appellant Ann Weber as to the liability of the County and the Sheriff under 42 U.S.C. § 1983 with respect to the challenged strip/body cavity search.

contraband, and all temporary detainees with prior records of convictions or unresolved arrests for felony offenses or for misdemeanors involving weapons or contraband, and asserting that such "bright lines" formulae are neccessary to provide workable guidance to jail administrators.