849 F.2d 66
 David L. WALSH, Plaintiff-Appellee,
v.
John L. FRANCO, Jr.; City of Burlington; Police Chief
William Burke; A. James Walton, Jr.; Richard Turner; City
of Burlington Police Department; State of Vermont
Department of Corrections, Defendants,
A. James Walton, Jr., Richard Turner, and State of Vermont
Department of Corrections, Defendants-Appellants.
 No. 1068, Docket 87-9031.
 United States Court of Appeals,
Second Circuit.
 Argued May 3, 1988.
Decided June 6, 1988.
 
 David Rath, Hinesburg, Vt. (Carol H. Terwilliger, Kohn & Rath, Hinesburg, Vt., on the brief), for plaintiff-appellee.
 Ronald A. Shems, Asst. Atty. Gen., Waterbury, Vt. (Jeffrey L. Amestoy, Atty. Gen., State of Vt., Donal F. Hartman, Jr., Asst. Atty. Gen., Waterbury, Vt., on the brief) for defendants-appellants.
 Before LUMBARD, OAKES and KEARSE, Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 Defendants A. James Walton, Jr., former Commissioner of the Vermont Department of Corrections, Richard A. Turner, Superintendent of the Chittenden County Correctional Center ("Chittenden"), and the Vermont Department of Corrections appeal from so much of an order of the United States District Court for the District of Vermont, Franklin S. Billings, Jr., Judge, as denied their motion to dismiss claims against them by plaintiff David L. Walsh, brought under 42 U.S.C. Sec. 1983 (1982), asserting that following his arrest in connection with unpaid parking tickets, Walsh was subjected to an unconstitutional strip search and body cavity inspection at Chittenden. Appellants moved for summary judgment dismissing these claims on the ground that they were entitled to qualified immunity from liability. The court denied the motion on the ground that at the time of the acts complained of, the law was clearly established that indiscriminate strip searches of persons arrested for misdemeanors, absent a reasonable suspicion that they conceal weapons or other contraband, violated the Fourth Amendment. On appeal, appellants contend principally that the court should have granted them summary judgment because it was objectively reasonable for them to believe that their blanket policy of strip-searching all arrestees was constitutional. We reject their contentions and affirm the order of the district court.
 
 BACKGROUND
 
 2
 Most of the pertinent events do not appear to be in dispute. Walsh was part-owner of a restaurant located on a private road in Burlington, Vermont. Though he had obtained an amendment of the city's parking ordinances to allow him to park service vehicles on that road, his vehicles were often given parking tickets. Prior to February 1985, the city attorney routinely voided the tickets. Thereafter it was agreed that Walsh would contest the tickets in court.
 
 
 3
 Walsh continued to receive parking tickets; he did not pay them, and he soon was issued a citation for failure to pay six $5 tickets. He appeared at his March 28 arraignment and pleaded not guilty. Scheduled to reappear on April 22, he moved to reschedule his appearance for after April 30. The court rescheduled it to April 29, but because the notice of hearing was sent to the wrong address, Walsh did not appear on April 29. A bench warrant was therefore issued for his arrest.
 
 
 4
 City police officers executed the warrant on Sunday evening, May 5, 1985. Arriving at Walsh's home at about 9:45 p.m., they informed him that he was under arrest and allowed him time to tell his family and change his clothes. Walsh was acquiescent until he and the officers arrived at the police car and he was informed that he would have to be patted down and handcuffed. He became very upset at the prospect of being handcuffed and insisted that his wife be called out to witness the proceedings. When the officers handcuffed Walsh without summoning his wife, Walsh became agitated and refused to get into the car. A minor scuffle followed, but Walsh calmed down when his wife and guests emerged from the house and a backup police car arrived.
 
 
 5
 Because the Vermont courts are closed on weekends, Walsh was taken to Chittenden for processing. Still "visibly upset" at being handcuffed, Walsh was processed in accordance with Chittenden's "standard intake process," which included not only photographing and fingerprinting, but also a strip search and visual body cavity examination. Although he again became agitated and verbally abusive at the prospect of the strip search, Walsh submitted to the search. While he was being processed, his wife arrived with $100 for bail, and Walsh was released without having left the processing area. At his eventual jury trial on the scofflaw charges, Walsh was acquitted.
 
 
 6
 Walsh commenced the present action against appellants and certain city officials in 1986 in state court, from which it was removed to the district court. He asserted that appellants were responsible for the strip-search policy at Chittenden and that the application of that policy to him violated his rights under the Fourth Amendment. Appellants moved for summary judgment dismissing the complaint against them on the ground that they were entitled to qualified immunity. In an Opinion and Order dated November 24, 1987, the district court denied the motion, relying on Weber v. Dell, 804 F.2d 796 (2d Cir.1986), cert. denied, --- U.S. ----, 107 S.Ct. 3263, 97 L.Ed.2d 762 (1987), which held that a strip search of a person arrested on misdemeanor charges is unconstitutional unless there is some reasonable basis for suspicion that the arrestee is concealing weapons or other contraband. The court stated that there was no reasonable basis for such suspicion in the present case given (a) the nature of the charges, (b) the fact that at Chittenden, Walsh's abuse had been strictly verbal, with no threat of assault, and his verbal abuse had begun only when he was informed that he was to be strip-searched, and (c) the fact that the officials at Chittenden had not been informed of Walsh's prior resistance to being handcuffed. The court noted that Weber had ruled that the constitutional prohibition against indiscriminate strip searches of misdemeanor arrestees was clearly established in 1983, and concluded as follows:
 
 
 7
 Mr. Walsh was arrested and searched on May 5, 1985, nearly two years after the arrest and search of the plaintiff in Weber. What was clearly established in 1983, remains so in 1985 absent decisions to the contrary. Finding no such intervening decisions, it is evident that the state defendants violated established federal law. Thus, defendants are not entitled to qualified immunity for the actions herein alleged.
 
 
 8
 This appeal followed.
 
 DISCUSSION
 
 9
 On appeal, appellants argue principally that because Chittenden houses misdemeanor arrestees along with its general jail population, the district court should have granted them summary judgment on the ground that it was objectively reasonable for them to believe that their blanket policy of conducting strip searches of all misdemeanor arrestees was not unconstitutional. We have considered all of appellants' arguments on this appeal, and we conclude they are without merit.
 
 
 10
 Qualified or "good faith" immunity shields government officials performing discretionary functions from liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); see Procunier v. Navarette, 434 U.S. 555, 565, 98 S.Ct. 855, 861, 55 L.Ed.2d 24 (1978); Wood v. Strickland, 420 U.S. 308, 322, 95 S.Ct. 992, 1000-01, 43 L.Ed.2d 214 (1975). Government officials are deemed to have "presumptive knowledge of and respect for 'basic, unquestioned constitutional rights,' " and may be held liable for a violation of constitutional rights when they " 'knew or reasonably should have known' " of the constitutionally violative effect of their actions. Harlow v. Fitzgerald, 457 U.S. at 815, 102 S.Ct. at 2736-37 (quoting Wood v. Strickland, 420 U.S. at 322, 95 S.Ct. at 1000-01) (emphasis in Harlow deleted). Thus, absent extraordinary circumstances, "[i]f the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." Id. at 818-19, 102 S.Ct. at 2738-39.
 
 
 11
 In Weber v. Dell, 804 F.2d 796, which involved a strip search of a person arrested on misdemeanor charges of falsely reporting a shooting and then resisting arrest, we held that
 
 
 12
 the Fourth Amendment precludes prison officials from performing strip/body cavity searches of arrestees charged with misdemeanors or other minor offenses unless the officials have a reasonable suspicion that the arrestee is concealing weapons or other contraband based on the crime charged, the particular characteristics of the arrestee, and/or the circumstances of the arrest.
 
 
 13
 Id. at 802. We rejected the contention that a policy of strip-searching every misdemeanor arrestee was justifiable because those arrestees were often housed among arraigned inmates, noting that the risk of a misdemeanor arrestee's introducing contraband into the general jail population simply did not warrant a strip search of all arrestees and that particularized suspicion is required for strip-searching any person arrested for a misdemeanor or other minor offense. Finally, we ruled that the defendant in Weber was not entitled to qualified immunity from liability for the unlawful search because the unconstitutionality of a policy of indiscriminate strip searches was clearly established in June 1983 when Weber was arrested. Id. at 803; see id. at 801 nn. 6-7 (surveying cases).
 
 
 14
 There have been no doctrinal developments altering the principles noted in Weber, and we therefore agree with the district judge in the present case that at the time of Walsh's arrest in 1985, the unconstitutionality of a blanket policy calling for strip searches of all misdemeanor arrestees was clearly established. Accordingly, appellants should have known that their policy was unconstitutional, they are presumed to have known it, and they were not entitled to summary judgment upholding their immunity defense.
 
 
 15
 In seeking to avoid application to themselves of the principle that public officials should know the clearly established law, appellants argue that the analysis set forth in Robison v. Via, 821 F.2d 913 (2d Cir.1987), required acceptance of their qualified immunity defense if it was objectively reasonable for them to believe that a blanket policy of conducting strip searches was not unconstitutional. This argument misreads Robison.
 
 
 16
 In Robison, we outlined three ways in which an official could establish his entitlement to qualified immunity. First, "the defense should be sustained if the court finds that it was not clear at the time of the official acts that the interest asserted by the plaintiff was protected by a federal statute or the Constitution." Id. at 920. Second, "even if the interest asserted by the plaintiff was clearly of a type generally protected by federal law, the defendant is entitled to immunity as a matter of law if it was not clear at the time of the acts at issue that an exception did not permit those acts." Id. at 921. Third, "even if the contours of the plaintiff's federal rights and the official's permissible actions were clearly delineated at the time of the acts complained of, the defendant may enjoy qualified immunity if it was objectively reasonable for him to believe that his acts did not violate those rights." Id. The first two methods discussed in Robison state, in essence, that the qualified immunity defense should be upheld if the law was not clearly delineated; they plainly have no applicability to the claims against appellants. The third method does not help appellants in their quest for summary judgment.
 
 
 17
 The third Robison method does not, as appellants would have it, state that even if all the contours of the law are clearly established, state officials are entitled to immunity if they did not know of that clearly established law, for Robison did not purport to suggest any deviation from the prevailing rule that "[t]he pertinent test in applying [the objective good-faith] defense is whether the federal law violated was clearly established, ... not whether a reasonable person would have known of the law. Officials are held to have constructive knowledge of established law." Salahuddin v. Coughlin, 781 F.2d 24, 27 (2d Cir.1986) (emphasis added). Rather the thrust of the third method discussed in Robison is that even where the law is clearly established, the factual circumstances may be such that the officials have an objectively reasonable basis for believing that their acts do not violate that clearly established law. We held there that though it was clearly established that a parent has a general constitutional right to retain custody of his or her children, it was objectively reasonable on the facts in that case for state officials to believe that emergency circumstances justified removal of the children from their mother. See also Anderson v. Creighton, --- U.S. ----, 107 S.Ct. 3034, 3039-40, 97 L.Ed.2d 523 (1987) (it may be objectively reasonable for officials to believe, albeit mistakenly, that, on the facts, search is supported by probable cause or exigent circumstances); Malley v. Briggs, 475 U.S. 335, 344-45, 106 S.Ct. 1092, 1098, 89 L.Ed.2d 271 (1986) (immunity lost "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable").
 
 
 18
 Thus, the third Robison method is fact-specific and would preserve the qualified immunity defense for these appellants only if, in light of the clearly established rule that indiscriminate strip-searching of misdemeanor arrestees is unconstitutional, it was objectively reasonable for the Chittenden officials to strip-search Walsh because of a particularized suspicion that he was concealing weapons or other contraband. The district court concluded that appellants had not shown any reasonable basis for such a suspicion with regard to Walsh, and the record tends to support this conclusion. Though appellants suggest that Walsh's behavior at Chittenden may have been somewhat more agitated than the district court found, they do not, and on this record could not properly, argue that the record regarding reasonable suspicions warranted summary judgment in their favor.
 
 CONCLUSION
 
 19
 The order of the district court denying appellants' motion for summary judgment is affirmed.