Elizabeth **GONZALEZ**, **Michael Fyvie** and **Charles Frisbee, Plaintiffs,**

v.

The **CITY OF SCHENECTADY**, Richard Barnett, Michael Siler, Thomas Mattice, Michael Glasser, Marisela Mosher, William Lachanski, and Eric Hesch, Individually and as Agents, Servants and/or Employees and Police Officers of the City of Schenectady and the City of Schenectady Police Department, and "John Doe" and "Jane Doe," Individually and being Unnamed Agents, Servants and/or Employees and Police Officers of the City of Schenectady and the City of Schenectady Police Department, Defendants.

No. 00–CV–0824.

United States District Court, N.D. New York.

April 5, 2001.

Tobin and Dempf, Albany, NY (Kevin A. Luibrand, Adrienne Kerwin, of Counsel), for plaintiffs.

Office of Corporation Counsel, Schenectady, NY (Michael T. Brockbank, of Counsel), for Defendants City of Schenectady, Mattice, Glasser, Mosher, Lachanski, and Hesch.

## MEMORANDUM—DECISION & ORDER

McAVOY, District Judge.

Plaintiffs commenced the instant action pursuant to 42 U.S.C. § 1983 alleging violations of their Fourth and Fourteenth Amendment rights arising out of their alleged arrests, detainments, and strip searches by Defendants. Plaintiffs also assert various pendent state law causes of action. Presently before the Court are Plaintiffs Elizabeth Gonzalez and Michael Fyvie's motion for partial summary judgment pursuant to FED. R. CIV. P. 56 on the issue of the City of Schenectady's liability for its strip search policy and Defendants City of Schenectady, Thomas Mattice, Michael Glasser, Marisela Mosher, William Lachanski, and Eric Hesch's cross-motion for summary judgment pursuant to Rule 56 on that same issue.

## I. BACKGROUND

The Court will state only those facts relevant to the instant motions.

### A. The Strip Search Policy

At all times relevant hereto, the City of Schenectady (the "City") had an informal policy requiring that all detainees being held within the City cell block would be

strip searched regardless of the crime for which the detainee was being held. Glasser Dep., p. 13; Mosher Dep., p. 9; Lachanski Dep., p. 6; Mattice Dep., p. 69; Hesch Dep., p. 31–32; Def. Rule 7.1(a)(3) stmnt, no. 1.

## B. Elizabeth Gonzalez

On April 28, 1998, Defendant City of Schenectady Police Officer Eric Hesch stopped Gonzalez's vehicle for a purported traffic violation. Hesch obtained Gonzlez's driver's license, vehicle registration, and insurance card. Hesch returned to his car and learned that there was an "association hit" on Gonzalez.[1] Hesch explained the association hit to Gonzalez and asked her if she would come to the police station to resolve the matter. Gonzalez agreed.[2] According to Gonzalez, Hesch ordered a female police matron at the police station to strip search her. Gonzalez contends that she was then strip searched.[3] Defendants deny having strip searched Gonzalez.

The matron then took Gonzalez's fingerprints. Hesch drove the fingerprints to Albany to check whether Gonzalez was indeed a wanted individual. The fingerprint check revealed that Plaintiff was not one of the wanted individuals. Plaintiff was then released without being charged with any crimes or being issued any tickets.

## C. Michael Fyvie

On May 30, 1999, Defendant City of Schenectady Police Officer Michael Glasser responded to a fight call. At that time, Glasser arrested Fyvie, brought him to the police station, and charged him with disorderly conduct. After being held in a holding cell for a period of time, Fyvie was issued an appearance ticket and released. As he was leaving the police station, Fyvie had some words with a police officer.[4] City police officers then grabbed him, returned him to the booking area, and strip searched him. Fyvie was then placed in a cell for approximately one hour until his parents posted bail for his release. No further charges were leveled against Fyvie.

Gonzalez and Fyvie then commenced the instant action pursuant to 42 U.S.C.

---

1. An association hit does not mean that the subject person is necessarily wanted, but that "there is something close, [there is a] similarity that that person is believed could possibly be the wanted person." Hesch Dep., p. 21.

The documents submitted by Defendants demonstrate that the association hits identified the following information:
(1) Name: Betsy Gonzalez; Sex: Female; Date of Birth: 04/24/69; Height: 5'7"; Weight: 176 lbs; wanted for a parole violation.
(2) Name: Elizabeth Gonzalez; Sex: Female; Race: White; Date of Birth: 1/4/68; Height: 5'3"; Weight: 120 lbs; wanted by the New York City Police Department for possession of a weapon.
(3) Name: Elizabeth Gonzalez; Sex: Female; Race: White: Date of Birth: 4/12/70; Height: 5'4"; Weight: 136 lbs; wanted by the New York City Police Department for larceny.

Gonzalez was born on April 25, 1968, is Hispanic, weighed approximately 130 pounds at the time in question, and is 5'3" tall.

2. Hesch drove Gonzalez to the police station in his vehicle, apparently without frisking her or using handcuffs.

3. At deposition, Gonzalez testified that she was required to pull her pants down to her knees, exposing her underwear. Gonzalez further testified that she was not required to bend over or show any body cavities. Gonzalez then had to lift her shirt up, exposing her brassiere. Gonzalez Dep., pp. 55–56.

4. There is a dispute as to what Fyvie said at this time. Fyvie states he was merely asking questions about the charge against him while Defendants contend that Fyvie stated he intended to return to the scene of the fight and finish what he started and lunged at a police officer.

§ 1983 alleging, among other things, violations of their Fourth Amendment rights. Presently before the Court are: (1) Gonzalez and Fyvie's (collectively "Plaintiffs") motion for partial summary judgment pursuant to FED. R. CIV. P. 56 on the issue of the City of Schenectady's liability for its alleged unconstitutional strip search policy; and (2) Defendants City of Schenectady, Thomas Mattice, Michael Glasser, Marisela Mosher, William Lachanski, and Eric Hesch's cross-motion for summary judgment pursuant to Rule 56 on that same issue.

## II. DISCUSSION

### A. Summary Judgment Standard

In addressing the pending motions, the Court will apply the familiar standard for summary judgment, which need not be restated here. *Roman v. Cornell Univ.,* 53 F.Supp.2d 223, 232–33 (N.D.N.Y.1999); *Phipps v. New York State Dep't of Labor,* 53 F.Supp.2d 551 (N.D.N.Y.1999); *Riley v. Town of Bethlehem,* 44 F.Supp.2d 451, 458 (N.D.N.Y.1999).

### B. The Constitutionality of the Strip Search Policy

The City admits that it had a policy of strip searching all detainees who were to be placed in the cell block. As previously discussed, the undisputed evidence is that this was a blanket policy applicable to all detainees, regardless of their individual circumstances.

 It is well-settled in this Circuit that "the Fourth Amendment precludes prison officials from performing strip/body cavity searches of arrestees charged with misdemeanors or other minor offenses unless the officials have a reasonable suspicion that the arrestee is concealing weapons or other contraband based on the crime charged, the particular circum-stances of the arrestee, and/or the circumstances of the arrest." *Weber v. Dell,* 804 F.2d 796 (2d Cir.1986). Because the City of Schenectady had a policy of strip searching all persons to be detained, regardless of whether the police had the requisite reasonable suspicion, the policy at issue here violates the Fourth Amendment. *Id.* The fact that the City did not search all arrestees, but only those to be held in the cell block awaiting court action, does not insulate their policy from the fact that they conducted blanket searches on such individuals without first considering, on an individual basis, whether they had reasonable suspicion to do so. *Varrone v. Bilotti,* 123 F.3d 75, 79 (2d Cir.1997). Moreover, the City is liable for this official, although unwritten, policy. *Monell v. Department of Social Servs.,* 436 U.S. 658, 694, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The City argues that the Second Circuit's reasonable suspicion requirement is inconsistent with the Supreme Court's decisions in *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979), and *Block v. Rutherford,* 468 U.S. 576, 104 S.Ct. 3227, 82 L.Ed.2d 438 (1984), and should, therefore, be rejected. The Second Circuit's decision in *Weber* was decided after *Block* and *Wolfish* and fully took those decision into consideration. The holding in *Weber* has consistently been reaffirmed by the Second Circuit, *see, e.g., Ciraolo v. City of New York,* 216 F.3d 236, 238 (2d Cir.2000), and is in accord with the precedent of other circuit courts. *See, e.g., Swain v. Spinney,* 117 F.3d 1 (1st Cir. 1997); *Kelly v. Foti,* 77 F.3d 819 (5th Cir.1996). The Court sees no basis upon which to depart from the clear law in this Circuit on this issue. The Court, therefore, finds that the City of Schenectady used an unconstitutional strip search policy.

This, however, does not end the inquiry. The Court must next examine whether Plaintiffs' constitutional rights were violated by this policy.

## 1. Gonzalez

■ Gonzalez alleges in her deposition that Defendants required her to lower her pants (but not her underwear) and raise her shirt (but not take off her bra). Defendants deny this and point out that the policy only applied to detainees placed in the cell block. Gonzalez was never charged with any crime. Defendants submitted the cell block record for September 28, 1998, which does not include Gonzalez's name, thereby indicating that she was not placed in the cell block. In fact, Gonzalez admits she was not placed in a cell. Gonzalez Dep., p. 46. Defendants also submit the affidavits of Rebecca Gage and Diane Updyke, the City police department matrons who were on duty on the night in question, who state that Gonzalez was not placed in a cell or detention area and she was not searched. Hesch also testified at deposition that Gage likely was the matron on duty that night, that he gave no instructions to Gage, and that there was no reason for Gonzalez to be searched because she was not arrested.

Based on the above-discussed evidence, a fair-minded jury could reasonably conclude that Gonzalez was not placed in a cell and, therefore, not subjected to the City's policy.[5] The Court, therefore, finds a genuine issue of triable fact regarding whether Gonzalez was actually strip searched pursuant to the unconstitutional policy.[6]

■ Defendants argue that, assuming Gonzalez was searched, they had reasonable suspicion to do so because there was an association hit on her indicating that she may have had a warrant on an illegal possession of a weapon charge and "there was a reasonable basis to undertake that ... search ... particularly where Ms. Gonzalez was left unattended in an unse-

5. Gonzalez argues that the Court should disregard the Gage affidavit, which states that she was on duty on the evening in question and did not search Gonzalez, because the City's response to interrogatories indicate that: (1) the City did not then know what "police officer or police officers" conducted a search of Gonzalez; (2) the City indicated that there were no known witnesses to the incident; and (3) the City failed to indicate that Gage was on duty on the night in question. In addition, Gonzalez points to Hesch's deposition testimony where he recounts a conversation he had with Gage whereby she apparently indicated she did not recall whether she was on duty on the subject night and that she did not remember Gonzalez.

As to the first contention, Gage's affidavit reveals that she is not a "police officer" and, therefore, the interrogatory did not apply to her. As to the second contention, it is unclear when the City knew of Gage's involvement in the matter, although one would think it should have known she was on duty before preparing the responses to the interrogatories. As to the third contention, it appears that the City only listed police officers, although the relevant interrogatory question does ask for all police department employees. As to Hesch's deposition testimony, it is hearsay and, in any event, involves information that may have been discovered (by virtue of Hesch's testimony) after the City prepared the responses to the interrogatories.

Even if the Court were to exclude the Gage affidavit, it would still find genuine issues of triable fact based on: (1) Hesch's deposition testimony that he did not order Gage to search Gonzalez and Gonzalez likely would not have been searched because she was not arrested; and (2) the fact that the policy applies only to persons placed in the cell block and Defendants' evidence and Gonzalez's own admissions reveal that she was not placed in the cell block.

6. The only issue presently before the Court is whether Gonzalez was strip searched pursuant to an unconstitutional *policy*. The Court expresses no opinion on the merits of any claim Gonzalez may have for any strip search of her person not a result of that policy.

cure portion of the facility." Def. Mem. of Law, at 8. Defendants' argument in this regard defies logic and, frankly, is absurd. Considering the totality of the circumstances, including the nature of the traffic stop, Gonzalez's compliance and cooperation with Hesch during his investigation of this matter, Gonzalez's agreement to accompany Hesch to the police station to resolve the matter, and the facts that Hesch did not see it fit to frisk or handcuff Gonzalez or to place her in a holding cell,[7] it is disingenuous at best for Defendants to now contend that they had a reasonable suspicion that she might have possessed weapons or contraband.

Accordingly, the Court denies Plaintiff's motion and Defendants' cross-motion for summary judgment as to Gonzalez.

### 2. Fyvie

██ Defendants admit that they strip searched Fyvie, who was placed in a cell. Fyvie thus falls squarely within the City's unconstitutional policy. Defendants again argue, however, that they had reasonable suspicion to strip search Fyvie.

Fyvie was arrested for a violation of N.Y. PENAL LAW § 240.20, disorderly conduct, for his alleged involvement in a fight. Disorderly conduct is a violation under New York Law. N.Y. PENAL LAW § 240.20. Fyvie did not offer much resistance, if any, to Glasser, the arresting officer, and was placed in handcuffs. Glasser frisked Fyvie but did not find anything that caused concern. Glasser then brought Fyvie to the police station. At the station, Fyvie was placed in a holding cell, without any further searches. After

considering such factors as the extent of the crime, the charge, and the extent of Fyvie's cooperation, Glasser Dep., p. 44., Glasser determined to issue Fyvie an appearance ticket and release him without the need to post bail. *Id.* at 34. Defendants released Fyvie. While in the process of being released, Fyvie apparently made some comments to the police regarding his arrest.[8] Defendants then rescinded Fyvie's appearance ticketed and returned him to the holding cell area. Fyvie was then strip searched, placed in the holding cell, and later released on bail.

Based on these facts, and even assuming that Fyvie lunged at a police officer, there is no evidence upon which a fair minded jury could reasonably conclude that Defendants had reasonable suspicion to believe that Fyvie was concealing weapons or other contraband based on the crime charged, his particular characteristics, and/or the circumstances of the arrest. *Weber,* 804 F.2d at 802. While Fyvie may not have been the model prisoner, there is nothing in the record tending to suggest that he was in possession of contraband or weapons. The charge against Fyvie, disorderly conduct, is not particularly serious. Defendants point to no specifics of Fyvie's character or his arrest that would have led them to reasonably believe that he was in possession of weapons or contraband. This is particularly so in light of the fact that Defendants did not initially strip search Fyvie upon placing him in the holding cell. Defendants did not strip search him until after they had released him and decided to re-detain him. The fact that Defendants chose "to rescind the appear-

---

7. In fact, Hesch left Gonzalez unsecured with the matron while he left to drive to Albany to run a check on her fingerprints. If Hesch truly believed Gonzalez to pose a risk to the security of the police station, one would think he would have acted more prudently.

8. There is a factual dispute over what transpired at this point. Defendants contend that Fyvie was being belligerent, lunged at a police officer, and stated he was going back to the scene to finish what he had started. Fyvie, on the other hand, contends he was merely protesting his arrest.

ance ticket and take Fyvie back into custody" and make him await bail brings him precisely within the parameters of the unconstitutional strip search policy. Accordingly, Plaintiff is entitled to summary judgment for the violations of his Fourth Amendment rights caused by the City's unconstitutional strip search policy. Issues of fact remain regarding any actual (as opposed to nominal) damages.

### III. CONCLUSION

For the foregoing reasons, Plaintiff Gonzalez's motion for summary judgment is DENIED IN ITS ENTIRETY; Plaintiff Fyvie's motion for summary judgment is GRANTED as to his claim against the City of Schenectady that he was strip searched in violation of his Fourth Amendment rights pursuant to an unconstitutional strip search policy; and Defendants' motion for summary judgment is DENIED IN ITS ENTIRETY.

**IT IS SO ORDERED.**