356 F.3d 211
 Ray E. SHAIN, Plaintiff-Appellee-Cross-Appellant,
v.
John ELLISON, individually and as a Nassau County Police Officer, John Doe, individually and as an Assistant District Attorney of Nassau County, The County of Nassau, a Municipal Corporation, and Joseph Jablonsky, Defendants-Appellants-Cross-Appellees,
James H. MADDEN, individually and as a Judge of Nassau County, Defendant.
 No. 02-9262(L).
 No. 02-9348(XAP).
 United States Court of Appeals, Second Circuit.
 Argued: September 11, 2003.
 Decided: January 20, 2004.
 
 Appeal from the District Court, Leonard D. Wexler, J.
 Lorna B. Goodman (Peter J. Clines, on the brief), Nassau County Attorney, Mineola, NY, for Defendants-Appellants-Cross-Appellees.
 Robert L. Herbst (Spencer B. Freedman, on the brief), Beldock, Levine & Hoffman LLP, New York, NY, for Plaintiff-Appellee-Cross-Appellant.
 Before: CABRANES, B.D. PARKER, Circuit Judges, RAKOFF, District Judge.*
 B.D. PARKER, JR., Circuit Judge.
 
 
 1
 Nassau County and its named employees ("Nassau County") challenge an order of the United States District Court for the Eastern District of New York (Leonard D. Wexler, Judge). The court enjoined Nassau County from strip searching misdemeanor admittees to the Nassau County Correctional Center ("NCCC") absent individualized suspicion that they were concealing weapons or contraband. Because we conclude that appellee Ray E. Shain lacked standing to seek such injunctive relief, we vacate the injunction and remand with instructions to dismiss Shain's claim for injunctive relief for lack of subject matter jurisdiction.
 
 I. BACKGROUND
 
 2
 As this case comes to us a second time, we offer an abbreviated version of the facts detailed in Shain v. Ellison, 273 F.3d 56 (2d Cir.2001). Shain was arrested by Nassau County police in July 1995 after his then-wife reported that he had threatened violence during a domestic dispute. He was arraigned in court on misdemeanor charges and remanded to the NCCC.[1] Upon his arrival, Shain was subjected to a strip/visual cavity search pursuant to a policy in place at the institution at that time which required all admittees to be stripped and searched regardless of the severity of the charge or whether the admittee was suspected of concealing a weapon or contraband. Shain was strip searched again the next day prior to an appearance in Nassau County Family Court. Eventually, the charges against him were withdrawn or adjourned in contemplation of dismissal.
 
 
 3
 In 1996, Shain sued Nassau County under 42 U.S.C. § 1983 alleging that the blanket strip search policy violated the Fourth Amendment. He also asserted a number of state law tort claims. He sought money damages, a declaration that the policy was unconstitutional, and "an order enjoining such blanket strip searches and body cavity inspections and regulating the conditions and circumstances under which such searches and inspections can be conducted pursuant to guidelines to be set by the Court." At no point in front of the District Court did Shain aver a likelihood that in the future he might again be exposed to the policy.
 
 
 4
 Nassau County moved for summary judgment, contending, among other things, that the individual defendants were entitled to qualified immunity. Shain cross-moved for partial summary judgment challenging the constitutionality of the strip search policy. The District Court granted Shain partial summary judgment, concluding that under clearly established federal law, the strip search was unconstitutional and that, consequently, the individual officers were not entitled to qualified immunity.[2] Shain v. Ellison, 53 F.Supp.2d 564 (S.D.N.Y.1999). The court rejected Nassau County's claim that the reasonableness of a strip search policy had to be judged in light of institutional concerns, concluding that such searches could only be justified by focusing on the nature of the crime or the circumstances surrounding the arrest but not on institutional priorities. Id. at 567. Eventually the case went to trial where Shain received a nominal monetary damage award and a declaration that the policy was unconstitutional.
 
 
 5
 On appeal, we affirmed in part and remanded in part. Shain, 273 F.3d at 66-67. We held that our clearly established Fourth Amendment precedent — notably Weber v. Dell, 804 F.2d 796 (2d Cir.1986), and Walsh v. Franco, 849 F.2d 66 (2d Cir.1988) — precluded jails from strip searching misdemeanor arrestees absent a reasonable suspicion that weapons or other contraband were concealed.[3] Id. at 66. This conclusion meant that the individual defendants were not entitled to qualified immunity. Although we affirmed the District Court's declaration that the strip search policy was unconstitutional, we noted that the District Court's judgment "neither explicitly granted nor denied" Shain's request for injunctive relief and "the record before us [was] not adequate to determine whether injunctive relief [was] necessary." Id. at 67. Therefore, we remanded "to allow the district court to make the necessary findings and conclusions" pursuant to Fed.R.Civ.P. 52(a). Id.
 
 
 6
 On remand, Shain argued that he possessed adequate standing because the official nature of the policy created the prospect that, were he to be subsequently arrested, he would again be treated in an unconstitutional manner. Without addressing the standing issue, the District Court granted an injunction:
 
 
 7
 Defendants Nassau County and all of its employees and agents are hereby enjoined from effectuating any blanket policy at the Nassau County Correctional Center whereby all individuals remanded to that institution are subject to a strip, visual body cavity, or any more invasive search, absent a reasonable suspicion that such individual is concealing weapons or other contraband.
 
 
 8
 Nassau County appeals, arguing that: (1) Shain lacks standing to seek injunctive relief, (2) the injunction violates the Prison Litigation Reform Act, 18 U.S.C. § 3626 et seq., and (3) the issue of injunctive relief has become moot because, in the interim, the County had officially ended its blanket strip search policy. As explained below, we find that since Shain has not met his burden of demonstrating standing to seek injunctive relief, the federal courts lack subject matter jurisdiction over his claim for such relief.
 
 II. DISCUSSION
 
 A. Standard of Review
 
 
 9
 We review a district court's grant of a permanent injunction for abuse of discretion. S.C. Johnson & Son, Inc. v. Clorox Co., 241 F.3d 232, 237 (2d Cir.2001). A district court abuses its discretion when it rests its decision on a clearly erroneous finding of fact or makes an error of law. Id. The existence of standing is a question of law that we review de novo. Benjamin v. Fraser, 343 F.3d 35, 43 (2d Cir.2003).
 
 
 B. Standing
 
 
 10
 At this stage of the litigation, neither party contests the fact that Shain suffered an unconstitutional strip search and, consequently, had standing to seek appropriate monetary and declaratory relief. Additionally, our previous holding that the strip search policy is unconstitutional was necessarily antecedent to our affirming of the damages award and, therefore, remains the law of the case. But whether Shain has standing to seek injunctive relief is a different matter. If Shain lacks standing, we lack subject matter jurisdiction to entertain a request for such relief. Whitmore v. Arkansas, 495 U.S. 149, 154-55, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990). In order to meet the constitutional minimum of standing to seek injunctive relief, Shain must carry the burden of establishing that "he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct." City of Los Angeles v. Lyons, 461 U.S. 95, 101-102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (citations and internal quotation marks omitted). In doing this, he "cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he... will be injured in the future." Deshawn E. by Charlotte E. v. Safir, 156 F.3d 340, 344 (2d Cir.1998); see also O'Shea v. Littleton, 414 U.S. 488, 495-96, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974) (holding that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects"). Finally, abstract injury is not enough; rather, "[t]he injury or threat of injury must be both `real and immediate,' not `conjectural' or `hypothetical.'" O'Shea, 414 U.S. at 494, 94 S.Ct. 669; Golden v. Zwickler, 394 U.S. 103, 110, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).
 
 
 11
 City of Los Angeles v. Lyons occupies much of this territory. There, the Supreme Court held that Lyons, who was placed in a chokehold by a Los Angeles police officer during a minor traffic stop, did not have standing to seek prospective injunctive relief barring police officers from indiscriminately using chokeholds. While past injury supplied a predicate for compensatory damages, it did not, according to the Court, supply one for prospective equitable relief since the fact that such practices had been used in the past did not translate into a real and immediate threat of future injury to Lyons. Lyons, 461 U.S. at 105-106, 103 S.Ct. 1660.
 
 
 12
 Similarly, Shain has not established — or even alleged before this appeal — the likelihood of a future encounter with the Nassau County police likely to result in a subsequent unconstitutional strip search. At the time of his arrest in 1995, Shain was an attorney admitted to the bar. He had no criminal record and, indeed, had never been arrested outside the context of his contentious divorce proceedings. Although he makes the conclusory claim that, at the time his lawsuit was filed, he was not long removed from acrimonious divorce proceedings, he makes no claim of any ongoing marital discord that might give rise to the fear of a repeat encounter with police officers. In fact, in the year between his arrest and his lawsuit, Shain was not rearrested, nor does he allege that he had any further encounters with the police. Significantly, at the time of the lawsuit, he was no longer married to or living with his ex-wife. Finally, even if Shain were arrested again on a misdemeanor charge, it is entirely conjectural that he would be detained overnight and remanded to the NCCC, as almost all misdemeanor arrestees are released on their own recognizance or on bail. These facts suggest to us that Shain was no more likely to be subject to misdemeanor arrest and detainment than any other citizen of Nassau County. As the Court stated in Lyons: Absent a sufficient likelihood that he will again be wronged in a similar way, Lyons is no more entitled to an injunction that any other citizen of Los Angeles; and a federal court may not entertain a claim by any or all citizens who no more than assert that certain practices of law enforcement are unconstitutional.
 
 
 13
 Id. at 111, 103 S.Ct. 1660. Under Lyons, to establish a sufficient likelihood of a future unconstitutional strip search, Shain would have to show that if he is arrested in Nassau County and if the arrest is for a misdemeanor and if he is not released on bail and if he is remanded to NCCC and if there is no particularized reasonable suspicion that he is concealing contraband, he will again be strip searched. Such an accumulation of inferences is simply too speculative and conjectural to supply a predicate for prospective injunctive relief. O'Shea, 414 U.S. at 497, 94 S.Ct. 669.
 
 
 14
 Shain's reliance on Deshawn E. is misplaced. There, we held that a class of minors had standing to seek injunctive relief barring a squad of detectives from taking such minors into custody in the future and interrogating them without the benefit of counsel. Although we noted in Deshawn E. that appellants were objecting to an official governmental policy, we did not in any way suggest that the existence of an official policy, on its own, is sufficient to confer standing to sue on any individual who had previously been subjected to that policy. To the contrary, we explained that, unlike the plaintiff in Lyons, the class of minors in Deshawn E. had demonstrated a sufficient likelihood of future harm at the hands of New York's police department based on allegations that statements made during unlawful interrogations were used to enhance charges in ongoing proceedings and as leverage in plea negotiations. Deshawn E., 156 F.3d at 344-45. Deshawn E. thus suggests — and Lyons confirms — that a plaintiff seeking injunctive relief must demonstrate both a likelihood of future harm and the existence of an official policy or its equivalent. See Lyons, 461 U.S. at 105-06, 103 S.Ct. 1660 (stating that "[i]n order to establish an actual controversy in this case, Lyons would have had not only to allege that he would have another encounter with the police but also" to allege the existence of an official policy or its equivalent). Here, Shain has failed to demonstrate a likelihood of future harm and therefore, even if he was subjected to an official policy, he lacks standing to seek injunctive relief.
 
 III. CONCLUSION
 
 15
 For these reasons, we vacate the injunction and remand to the District Court with instructions to dismiss for lack of subject-matter jurisdiction. We therefore do not reach appellant's other claims on appeal.
 
 
 
 Notes:
 
 
 *
 The Honorable Jed S. Rakoff, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 New York law generally provides that a misdemeanor arrestee, after being arraigned, must be released on his own recognizance or allowed to post bail. N.Y. CRIM. PROC. LAW § 170.10(7) (Consol.2003). However, under New York family law, an arraigning magistrate has the discretion to remand the misdemeanor arrestee to the custody of the sheriff when the alleged offense is a family offense. N.Y. FAM. CT. ACT § 155 (Consol.2003)
 
 
 [2]
 Shain had also initially filed claims of false arrest and imprisonment, abuse of process, malicious prosecution, and excessive force. The first three claims were dismissed by the District Court on Nassau County's summary judgment motion while the excessive force claim went to trial. It was ultimately rejected by the jury. The court declared the strip search policy to be unconstitutional and awarded Shain $1 in nominal damagesShain, 273 F.3d at 62.
 
 
 [3]
 We held that even though the Supreme Court, inTurner v. Safley, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987), had established that a reasonable relation to a legitimate penological interest is sufficient to prove the constitutionality of a prison regulation, such a test was not relevant in Shain because the NCCC was a local jail and not a prison within the meaning of Turner. Shain, 273 F.3d at 65. But see Shain, 273 F.3d at 70 (Cabranes, J., dissenting) (arguing that Turner's "reasonably related to legitimate penological interests" standard should apply here to assess the NCCC's blanket strip search policy).