09-2053-cv
Carver v. City of N.Y.

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2009


(Argued: April 5, 2010      Decided: September 23, 2010)

Docket No. 09-2053-cv

- - - - - - - - - - - - - - - - - - - - -x

WALTER E. CARVER, individually, and on behalf of those similarly situated,

Plaintiff-Appellant,

- v.-

THE CITY OF NEW YORK, a body corporate and politic, MICHAEL R. BLOOMBERG, individually and in his official capacity as Mayor of the City of New York, NEW YORK CITY HUMAN RESOURCES ADMINISTRATION, DEPARTMENT OF SOCIAL SERVICES, an agency of the City of New York, ROBERT DOAR, individually and in his official capacity as Administrator and Commissioner of the New York City Human Resources Administration and Department of Social Services, NEW YORK CITY HEALTH AND HOSPITALS CORPORATION, a New York corporation, ALAN D. AVILES, individually and in his official capacity as President and Chief Executive Officer of New York City Health and Hospitals Corporation, NEW YORK CITY DEPARTMENT OF TRANSPORTATION, an agency of the City of New York, JANETTE SADIK-KHAN, individually and in her official capacity as Commissioner of the New York Department of Transportation,

Defendants-Appellees.

- - - - - - - - - - - - - - - - - - - - -x


        Before:        JACOBS, Chief Judge, WINTER and WALKER,
                       Circuit Judges.

Plaintiff Walter Carver appeals from an April 1, 2009 judgment of the United States District Court for the Eastern District of New York (Sifton, J.), dismissing his complaint for lack of standing. As a recipient of public assistance from the City of New York, Carver was required to work for the City, and was paid minimum wage, under a program funded in whole or part by the State of New York. Pursuant to state law, the State intercepted part of a lottery prize won by Carver as reimbursement for public assistance, and paid the funds over to the City. Carver sued the City, asserting various constitutional violations and violations of the minimum wage laws. The district court dismissed Carver's suit on the ground that no action of the City defendants caused Carver's injury. **AFFIRMED IN PART**, **VACATED IN PART**, and **REMANDED**.

Judge Winter dissents in a separate opinion.

RICHARD D. LAMBORN, Bronx, NY, for Plaintiff-Appellant.

MORDECAI NEWMAN, Assistant Corporation Counsel (Larry A. Sonnenshein, Abigail Lynne Goldenberg, of counsel), for Michael A. Cardozo, Corporation

2

Counsel of the City of New York, New York, NY, <u>for Defendants-Appellees</u>.

DENNIS JACOBS, <u>Chief Judge</u>:

Plaintiff Walter Carver appeals from an April 1, 2009 judgment of the United States District Court for the Eastern District of New York (Sifton, <u>J.</u>), dismissing his complaint for lack of standing. As a recipient of public assistance from the City of New York, Carver was required to work for the City, and was paid minimum wage, under a program funded in whole or part by the State of New York. State law requires all state public-assistance recipients to reimburse the state for the assistance they receive, if they win the lottery. Carver won the lottery. It is alleged that the State intercepted part of the prize, and paid it over to the City. Carver sued the City (and various officials and agencies), seeking to recoup the prize money as well as prospective injunctive and declaratory relief. On behalf of himself and others similarly situated, he alleged (<u>inter alia</u>) violation of state and federal constitutional rights and of state and federal minimum wage laws. The United

States District Court for the Eastern District of New York (Sifton, J.) dismissed for lack of standing on the ground that no action of the City defendants caused Carver's injury.

Insofar as the district court dismissed Carver's minimum-wage claims for retrospective relief, we hold that dismissal was in error, and accordingly vacate the court's judgment. In so holding, we express no opinion on the merits of these claims, or any defenses that defendants may raise. Otherwise, we affirm.

**I**

New York City's Work Experience Program ("the WEP") employs public-assistance recipients in the public sector as a condition of receiving public funds. N.Y. Social Services Law § 336. Walter Carver worked for the City under the WEP from 1993 to March of 2000. For his work, Carver alleges that he was paid the equivalent of federal minimum wage in cash and public-assistance funds.

On or about August 10, 2007, Carver won $10,000 in the

4

New York State lottery.

Section 131-r of the New York Social Services Law provides that any recipient of state public-assistance funds who wins a lottery prize of $600 or more must "reimburse the [state department of social services] from the winnings," up to half of the prize amount:

> Any person who is receiving or has received, within the previous ten years, public assistance pursuant to the provisions of this article, and who wins a lottery prize of six hundred dollars or more shall reimburse the [state department of social services] from the winnings, for all such public assistance benefits paid to such person during the previous ten years; provided, however, that such crediting to the department shall in no event exceed fifty percent of the amount of the lottery prize.

N.Y. Soc. Serv. L. § 131-r. To enforce this obligation, § 131-r directs the state commissioner of social services to "enter into an agreement with the director of the lottery, pursuant to [N.Y. Tax L. § 1613-b], for the crediting of lottery prizes against public assistance benefits." Id.; see also N.Y. Tax L. § 1613-b (directing the state Office of Temporary and Disability Assistance to coordinate the crediting of lottery prizes pursuant to N.Y. Soc. Serv. L.

§ 131-r).

Pursuant to N.Y. Social Services Law § 131-r and N.Y. Tax Law § 1613-b, the New York State Office of Temporary and Disability Assistance ("OTDA") intercepted $5000, to be credited against the public assistance Carver had been paid. Carver alleges that the intercepted funds were then paid over to New York City. To recover his intercepted winnings, Carver initiated a series of lawsuits in state and federal court.

Carver initiated this lawsuit on September 10, 2008, styling his complaint as a putative class action on behalf of himself and all others similarly situated. Named as defendants were the City of New York, and various subsidiary agencies and city officials; Carver did not join the State of New York or any State agency or employee. Carver asserted [1] a taking violative of his rights under the federal and New York state constitutions; [2] a violation of his equal protection rights under the federal and New York state constitutions; [3] a violation of substantive due process under the federal and New York state constitutions;

6

[4] a violation of § 206 of the Fair Labor Standards Act, 29 U.S.C. § 206;[1] [5] a violation of New York state minimum wage law, N.Y. Labor Law § 652;[2] and [6] inadequate notice of his rights as a lottery winner, in violation of N.Y. Tax Law § 1613-b(6).[3] He sought, _inter alia_, damages and

---

[1] 29 U.S.C. § 206 provides, in relevant part:

> Every employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, wages at the following rates.

29 U.S.C. § 206(a). The rates referred to are thereafter specified. _See_ _id._

[2] Section 652 of the New York Labor Law provides, in relevant part, that "[e]very employer shall pay to each of its employees for each hour worked a wage of not less than" a specified rate. N.Y. Labor L. § 652(1).

[3] Section 1613-b(6) of the New York Tax Law provides, in its entirety:

> The office of temporary and disability assistance shall notify the prize winner in writing, of the amount of such prize winning to be credited against public assistance benefits and the procedure and time frame by which the prize winner may contest such crediting. Such procedure shall include the address and telephone number of the office of temporary and disability assistance and who the prize winner may contact with respect to correction of any error in such crediting concerning such individual's liability for public assistance benefits or with respect to payment of

7

prospective injunctive and declaratory relief. Before serving an answer, the defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(1), for lack of standing, and under Rule 12(b)(6), for failure to state a claim.

On April 1, 2009, the district court granted the defendants' motion, dismissing Carver's complaint under Rule 12(b)(1) for lack of standing. The court explicitly declined to reach the merits of Carver's claims, premising its decision to dismiss entirely on standing grounds. This appeal timely followed.

**II**

Standing is a federal jurisdictional question "determining the power of the court to entertain the suit." Warth v. Seldin, 422 U.S. 490, 498 (1975). "[A] plaintiff must demonstrate standing for each claim and form of relief sought." Baur v. Veneman, 352 F.3d 625, 642 n.15 (2d Cir. 2003). At issue in this case is Article III standing, for

such liability.

8

which a plaintiff must show [1] that he "suffered an injury-in-fact--an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical"; [2] that there was a "causal connection between the injury and the conduct complained of"; and [3] that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (citations and internal quotation marks omitted).  "[E]ach element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."  Id. at 561.  "Because standing is challenged [here] on the basis of the pleadings, we [therefore] accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party."  W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP, 549 F.3d 100, 106 (2d Cir. 2008) (internal quotation marks omitted).  We review questions of standing de novo.  Id.

9

The district court found first that "[t]he only injury alleged by plaintiff is the withholding of his lottery winnings," and held that such withholding qualified as an "injury-in-fact." The court went on, however, to hold that causation was lacking: that the "OTDA, not the City Defendants, effected the action that constitutes [Carver's] claimed injury," and that Carver "ha[d] not alleged any facts supporting an inference that the City Defendants influenced [the] OTDA's decision to withhold [his] lottery winnings." "In fact," stated the court, "according to plaintiff's allegations, the City Defendants took no relevant action in this matter (other than supervising plaintiff's participation in the [WEP] years prior to the events leading to this action) until after [the] OTDA withheld plaintiff's lottery winnings, at which time they allegedly accepted funds which were transferred to them pursuant to a system of statutes, regulations, contracts[,] and practices." (internal quotation marks omitted).

We disagree. Carver has standing to assert his minimum-wage claims insofar as he alleges injury when the

City paid him minimum wage subject to a reimbursement obligation. Carver pertinently claims that the City defendants violated state and federal labor law by paying him minimum wage while requiring that he return some portion of those wages in the event he won the lottery. On this theory, Carver was directly injured by the City's alleged failure to abide by state and federal labor law when compensating him for his work.

True, on this theory, the City seemingly could not have complied with its minimum-wage obligations without, for example, agreeing to return (or reject) any intercepted lottery winnings as necessary to ensure that Carver's wages did not fall below statutory minimums, or exempting his wages from the reimbursement obligation, or paying him more (in anticipation of his lottery win). But this is a merits issue not necessary for us to consider here, and we decline to do so. The standing question is distinct from whether Carver has a cause of action. See, e.g., Whitmore v. Arkansas, 495 U.S. 149, 155 (1990) ("Our threshold inquiry into standing 'in no way depends on the merits of the

11

[petitioner's] contention that particular conduct is illegal,'" (quoting Warth, 422 U.S. at 500) (alteration in original)); Am. Civil Liberties Union of N.M. v. Santillanes, 546 F.3d 1313, 1319 (10th Cir. 2008) ("Standing is not a proxy for ruling on the merits and is determined at the outset of the lawsuit."); Long Term Care Partners, LLC v. United States, 516 F.3d 225, 241 (4th Cir. 2008) ("At its core, 'the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues," Warth, 422 U.S. at 498 . . . , which is always a distinct inquiry from the question of how a litigant's claim should be decided."); Lerman v. Bd. of Elections in City of N.Y., 232 F.3d 135, 143 n.9 (2d Cir. 2000) (same); 13A Charles Alan Wright et al., Federal Practice and Procedure § 3531, at 23 & nn. 36, 38 (3d ed. 2008) (same).

Alternatively, Carver has standing to assert his minimum-wage claims because the City's actions indirectly caused the interception of his lottery prize. As a rule, causation is shown if the defendants' actions had a

"determinative or coercive effect" on the action that produced the injury. Bennett v. Spear, 520 U.S. 154, 169 (1997). Though causation is lacking if the claimed injury results from "the independent action of some third party not before the court," a plaintiff need not allege that "the defendant's actions [were] the very last step in the chain of causation" to demonstrate that the defendant's actions caused the claimed injury. Id. It suffices that the defendant's actions had a "determinative or coercive effect upon the action of someone else" who directly caused the claimed injury. Id. Thus, causation turns on the degree to which the defendant's actions constrained or influenced the decision of the final actor in the chain of causation. Compare id. at 169 (holding that an administrative advisory opinion caused the advisee's action because it played a "central role" in the advisee's decision: The advisee would have had to articulate any reasons for disagreeing with the advice, and would have "run[] a substantial risk" if the advice had been ignored), with Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 28, 42-43 (1976) (holding that an

13

IRS Revenue Ruling "allowing favorable tax treatment to a nonprofit hospital that offered only emergency-room services to indigents" did not cause hospitals to deny other services to indigents because "[i]t is purely speculative whether the denials . . . fairly can be traced to [the Ruling] or instead result[ed] from decisions made by the hospitals without regard to the tax implications").

Although Carver's alleged injury was ultimately caused by the actions of the State OTDA (a non-party), the State OTDA's actions were a result of the City's prior conduct, such that the City is a sufficient cause of Carver's injury for the purpose of standing. New York law affords the State OTDA no discretion in obtaining reimbursement of public-assistance funds; if a public-assistance recipient wins the lottery, the OTDA must intercept his winnings. And there is no other relevant basis for State interception of a lottery winner's prize. It was thus because the City paid Carver in public-assistance funds that were conditioned on recoupment that the OTDA intercepted his lottery winnings, and that he suffered injury. Cf. Bennett, 520 U.S. at 169 (finding

14

sufficient causation where the purported indirect cause played a "central role" in the decision that directly caused the plaintiff's injury, but where the decision-maker nevertheless enjoyed some discretion); G&G Fire Sprinklers Inc. v. Bradshaw, 146 F.3d 893, 900 (9th Cir. 1998) (finding that the State of California caused a sub-contractor's injury, where the State withheld payment from a prime State contractor who in turn withheld payment from the sub-contractor, because, though the prime contractor had discretion to pay the sub-contractor, "the money would not have been withheld but for the [S]tate's actions").  This is enough to support Carver's standing on his minimum-wage claims, which allege that he was injured by the taking of his lottery prize in retroactive derogation of his rights under state and federal labor law.

Accordingly, the district court's judgment is vacated insofar as it dismissed Carver's state and federal minimum-wage claims.[4]  Our holding does not prejudge the merits of

---

[4] As discussed in Part IV, this disposition applies only to Carver's claims for retrospective relief.

Carver's claims or of any defenses that defendants may raise; any merits questions are more appropriately considered in the first instance by the district court.

**III**

Carver alleges that the notice of interception given by the ODTA did not conform to law. When a lottery winner's prize is intercepted by the OTDA, N.Y. Tax Law § 1613-b(6) requires, inter alia, that the OTDA "notify the prize winner in writing" of "the address and telephone number of the [OTDA] and who[m] the prize winner may contact" regarding his intercepted prize.[5] Carver alleges that the notice he

---

[5] N.Y. Tax Law § 1613-b(6) provides, in its entirety:

> The office of temporary and disability assistance shall notify the prize winner in writing, of the amount of such prize winning to be credited against public assistance benefits and the procedure and time frame by which the prize winner may contest such crediting. Such procedure shall include the address and telephone number of the office of temporary and disability assistance and who the prize winner may contact with respect to correction of any error in such crediting concerning such individual's liability for public assistance benefits or with respect to payment of such liability.

received from the OTDA omitted "a telephone number or address of a specific individual to contact." This failure was directly caused by the OTDA alone, and not by any of the named defendants; but the OTDA is not a defendant in this case. Cf., e.g., Lujan, 504 U.S. at 560 (noting that standing is lacking where the injury is "the result of the independent action of some third party not before the court" (quoting Simon, 426 U.S. at 41-42 (brackets omitted)).

Carver similarly lacks standing to assert his constitutional claims. In asserting his takings and substantive due process claims, he alleges that he was injured by the taking of his lottery prize; and in asserting his equal protection claims, he alleges that he was injured by the discriminatory taking of his lottery prize on the basis of his status as a public-assistance recipient. But these injuries were caused solely by the State: No action of the City caused the State to levy the challenged tax. Cf., e.g., id.

**IV**

17

Carver likewise lacks standing to obtain prospective relief. To establish standing to obtain prospective relief, a plaintiff "must show a likelihood that he will be injured in the future." Shain v. Ellison, 356 F.3d 211, 215 (2d Cir. 2004) (ellipsis and internal quotation marks omitted); accord City of Los Angeles v. Lyons, 461 U.S. 95, 105 (1983). The odds of winning big in a lottery are often analogized to being hit twice by lightning. And Carver does not even allege any intention to buy more lottery tickets. Moreover, Carver does not allege that he is currently receiving public assistance, or that he is likely to require it in the future. Cf. Shain, 356 F.3d at 215-16 (holding that plaintiff who had been subjected to police strip-search policy lacked standing to enjoin future strip searches because he had not alleged any likelihood that he would again be subject to the strip-search policy).[6]

---

[6] Nor does Carver's class action allegation alter the prospective standing analysis. Even if Carver's putative class included current public-assistance recipients, the standing problem would persist: A "class action allegation adds nothing to the standing inquiry since the named plaintiffs 'must allege and show that they personally have been injured, not that injury has been suffered by other,

18

**CONCLUSION**

For the foregoing reasons, Carver has standing to assert his minimum-wage claims (only), and to seek all retrospective relief.  He lacks standing on the remainder. We express no opinion on the merits of Carver's claims or any defenses that defendants may raise.  The district court explicitly declined to reach the merits below, and it would be premature to reach them for the first time on appeal: They are better left to the district court to consider in the first instance.  The district court's judgment is accordingly AFFIRMED IN PART and VACATED IN PART, and the case is REMANDED for further proceedings.

---

unidentified members of the class to which they belong and which they purport to represent.'" <u>Doe v. Blum</u>, 729 F.2d 186, 190 n.4 (2d Cir. 1984) (quoting <u>Warth</u>, 422 U.S. at 502).

19

WINTER, <u>Circuit Judge</u>, dissenting:

I respectfully dissent.

The present appeal involves a New York state tax on lottery winnings by persons who previously received direct welfare or workfare benefits. N.Y. Tax Law § 1613-b (McKinney 2010). A withholding ("interception" in appellant's lexicon) of this tax occurs before the lottery winner receives his or her winnings, presumably along with a similar withholding of federal, state, and local income taxes. <u>Id.</u> at § 1613-b(3).

The tax provision contains no language governing disbursement of the revenue received. The complaint alleges that New York State, by reason of New York law, regulation or custom, disburses the revenue from this tax to the municipality that paid the welfare benefits. This allegation is refined in appellant's brief, which states that only one-half of the tax withheld from lottery winnings ($2500 in Carver's case) is disbursed to the municipality while the other half is kept by the state. The "reimbursement" to the municipality is an attempt to conform to New York Social Services Law Section 153 requiring that New York State bear one-half of the welfare disbursements made by municipalities. N.Y. Soc. Serv. Law § 153(1)(d) (McKinney 2010).

There is no allegation that the City plays any role whatsoever in the levying of the tax, its collection, or the

1

disbursement of the funds.  At best, the City passively receives the money from the State, along with other State subsidies.

The complaint alleges that the harm to Carver is the withholding of the state tax on his lottery winnings.  Notably, there is <u>no</u> allegation in the complaint, or provision in any New York law or regulation, that, if the State ceased to disburse these funds to the City or if the City rejected them, the State would return the $2500 to Carver rather than keep it for itself. The statute creating the tax and the provision regarding disbursement are entirely separate and independent.  Changing the rules regarding disbursement would, therefore, have no effect on the levying of the tax on Carver.  Nor does he allege otherwise.

Given the allegations of the complaint, Carver has no standing to bring a Fair Labor Standards Act ("FLSA") action against the City.  The State made all relevant decisions and took all the administrative actions that resulted in the withholding of Carver's winnings.  The City has done absolutely nothing to cause the loss to Carver of his lottery winnings.

My colleagues seek to address this problem by theorizing that the City workfare payments to Carver were "conditioned," when made, on a possible "recoupment."  Of course, no such express condition can be found in the workfare payments Carver received, because the so-called "recoupment" could occur, if at all, only by operation of the provisions of whatever state laws

existed when and if Carver won the lottery.  Either the tax or the disbursement, or both, might well have been altered or repealed by the State, and by the State alone, when and if Carver won the lottery.

The theory that the workfare payments to Carver inflicted an injury because they were "conditioned" on compliance with whatever state tax laws might be in effect when and if he won the lottery is surely a stretch.  The workfare payments were also conditioned on all taxes, federal, state, and local that might be levied.  Indeed, all wages paid by all employers to all employees are conditioned on the levying and/or withholding of federal, state, and local taxes.[1]  In my view, an employer does not inflict an injury on an employee by paying wages that may be taxed.

Moreover, limiting the adjudication of Carver's claims to the party that took his winnings (and will keep the part disbursed to the City if the City were to reject or return it) risks no miscarriage of justice.  All Carver had to do was join the State as a defendant.  Indeed, he has sued the State in state

---

[1]Federal regulation expressly allows employers to deduct taxes imposed by the law of any sovereign without regard to the fact that the deduction reduces the net wage below FLSA standards.  29 C.F.R. § 531.38 (2010).  In short, the City itself could impose and deduct an income tax on Carver that reduced his workfare payments below FLSA standards and still not violate those standards.  Id.

Moreover, the FLSA has a statute of limitations of two years.  29 U.S.C. § 255(a) (2010).  If the violation occurred when the workfare payments were made, as my colleagues theorize, rather than when the State took the money, any claim would be time-barred.

3

court.  The present case is thus one of two judicial proceedings initiated over the withholding of Mr. Carver's lottery winnings, of which $2500 was disbursed to the City.  The other state court action asserts all the various claims made here, including the FLSA claim, against the State for the full $5000.

This is not, therefore, a case in which standing doctrine should be stretched beyond recognizable parameters.  The judicial, municipal, and private resources poured into Carver's attempt to recover $5000 must be in excess of six figures.  Now we have to face a remand to the district court followed perhaps by another appeal to this court.

I therefore respectfully dissent.