17-1427-cv
Robinson v. Sessions

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 18th day of January, two thousand eighteen.

PRESENT: DENNIS JACOBS,
         REENA RAGGI,
         PETER W. HALL,
                    Circuit Judges.

- - - - - - - - - - - - - - - - - - - - -X
William Robinson, Stephen J.
Aldstadt, David Bardascini, Michael
Carpinelli, George Curbelo, Jr.,
Wayne Denn, William R. Fox, Sr., Don
Hey, Garry Edward Hoffman, Raymond
Kosorek, Michael R. Kubow, Thomas J.
Lorey, Thomas A. Marotta, Michael
Mastrogiovanni, Kenneth E. Mathison,
Terrence J. McCulley, Jim Nowotny,
John E. Prendergast, Harold W.
Schroeder, Edward J. Stokes, John W.
Wallace, Leslie H. Wilson,
Christopher S. Zaleski, Mattie D.
Zarpentine, Tim Flaherty, Doug
Negley, Jacob Palmateer, Shooters
Committee for Political Education,
New York Revolution, Gun Rights
Across America – New York, NY2A.org,

1

Fulton County-NY Oath Keepers, and
all those other individuals who are
similarly situated,

       **Plaintiffs-Appellants,**

Larry Pratt, Gun Owners of America,
Inc.,

       **Plaintiffs,**

       -v.-                             17-1427-cv

Jefferson B. Sessions III, ATTORNEY
GENERAL OF THE UNITED STATES, in his
official and individual capacities,
Andrew McCabe, ACTING DIRECTOR OF THE
FEDERAL BUREAU OF INVESTIGATIONS, in
his official and individual
capacities, Christopher M. Piehota,
DIRECTOR OF THE TERRORIST SCREENING
CENTER, in his official and individual
capacities, Byron Todd Jones, ACTING
DIRECTOR OF THE BUREAU OF ALCOHOL,
TOBACCO, FIREARMS AND EXPLOSIVES, in
his official and individual
capacities,

       **Defendants-Appellees.**
- - - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| **FOR APPELLANT:** | PALOMA A. CAPANNA, Esq., Webster, New York. |
| **FOR APPELLEES:** | PATRICK G. NEMEROFF for Chad A. Readler, Acting Assistant Attorney General (Michael S. Raab, Attorneys, Appellate Staff Civil Division, on the brief), Washington, D.C. |

2

Appeal from a judgment of the United States District Court for the Western District of New York (Geraci, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED.**

William Robinson and his co-plaintiffs appeal from the judgment of the United States District Court for the Western District of New York dismissing their claim that various United States law enforcement agencies jeopardize the constitutional rights of prospective American gun owners by mishandling their personal information in the course of conducting routine background checks. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

The appellants are a collection of individuals and organizations committed to Second Amendment advocacy. They allege that the Government violates First, Second, Fourth, Fifth, and Fourteenth Amendment protections, along with the Administrative Procedure Act, 5 U.S.C. § 705, when the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") subjects potential firearm purchasers to background checks that cross-reference their personal information with the Terrorist Screening Database ("TSDB"), a master watchlist of individuals known or suspected of having terrorist ties. They frame the alleged screening practices as an unlawful expansion of The Brady Handgun Violence Prevention Act (the "Brady Act"), Pub. L. No. 103-159, 107 Stat. 1536 (1993), which created the National Instant Criminal Background Check System ("NICS Background Check") to prevent the transfer of firearms to individuals barred from firearm possession by federal or state law. 18 U.S.C. §§ 922(t),(g),(n).

All persons attempting to purchase firearms must undergo an NICS Background Check. See 18 U.S.C. §§ 922(t), 923(a). As part of that procedure, prospective customers must complete a firearms transaction record known as the ATF Form 4473, which elicits personal information and propounds questions to certify that the customer is qualified to possess a firearm under the enumerated Brady Act factors. 27 C.F.R. § 478.124; 28 C.F.R. § 25.7(a); 18

U.S.C. § 922(g)(1)-(9),(n) (setting forth ten conditions that render an individual ineligible to purchase a firearm). The Form 4473 information is then compared against databases from multiple agencies, including the Federal Bureau of Investigation's National Crime Information Center ("NCIC"). See 28 C.F.R. § 25.6(c)(1)(iii). Since 2004, the NCIC has incorporated data from the TSDB.[1] See J. App'x at 271-72. When the background check produces a "match" with any NCIC records, including those that may also reside in the TSDB, the application is delayed while NICS agents research the transaction to determine whether the individual would be prohibited by law from receiving or possessing a firearm. See 28 C.F.R. § 25.6(c)(1)(iv)(B). If the agent confirms that the customer fits one of the disqualifying conditions spelled out in 18 U.S.C. §§ 922(g),(n), the application is denied; if no prohibiting information is discovered (or three business days go by without a response), the sale proceeds. Id. § 25.6(c)(1)(iv)(B)-(C).

Appellants allege that this so-called "NICS-to-TSDB connection" procedure exceeds the agency's statutory authority and "amounts to domestic spying." Appellant's Br. at 25. The individual appellants allege that the defendants' conduct caused them to suffer a particularized constitutional deprivation because they each provided information on Form 4473s in the course of routine firearm purchases and would like to continue making such purchases in the future. The appellants do not allege, however, that they were denied firearms or they suffered delay in purchase; they do not claim to be listed in the TSDB; nor do they contend that any of their information has been compiled or retained beyond the screening period in violation of law. See 18 U.S.C. § 922(t)(2)(C); 28 CFR § 25.9(b)(1). The district court therefore concluded that "Plaintiffs fail to demonstrate that they have been, or will be, personally injured by the challenged conduct" and

---

[1] The Brady Act provides that "the Attorney General may secure directly from any department or agency of the United States such information on persons for whom receipt of a firearm would violate [18 U.S.C. §§ 922(t),(n)] or State law." Pub. L. No. 103-159, § 103(e)(1).

4

dismissed the complaint for lack of standing.  Robinson v. Sessions, 260 F. Supp. 3d 264, 274 (W.D.N.Y. 2017).

"The existence of standing is a question of law that we review *de novo*."  Shain v. Ellison, 356 F.3d 211, 214 (2d Cir. 2004).  To have standing, a party must allege "such a personal stake in the outcome of the controversy as to ensure that the dispute sought to be adjudicated will be presented in an adversary context and in a form historically viewed as capable of judicial resolution."  Sierra Club v. Morton, 405 U.S. 727, 732 (1972) (internal citation and quotation marks omitted).  The "irreducible constitutional minimum of standing" requires that "the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal citations and quotation marks omitted).  The "injury in fact" standing requirement "applies with special force" where, as here, "a plaintiff files suit to require an executive agency to 'follow the law'; at that point, the citizen must prove that he 'has sustained or is immediately in danger of sustaining a direct injury as a result of that [challenged] action and it is not sufficient that he has merely a general interest common to all members of the public.'"  Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1552 (2016) (quoting Ex parte Levitt, 302 U.S. 633, 634 (1937) (per curiam)); see also Summers v. Earth Island Inst., 555 U.S. 488, 490, 496-97 (2009) (requiring a "concrete interest" affected by the challenged conduct for standing to vindicate a procedural right).

The appellants fail to identify a direct injury in fact that they have sustained or will sustain as a result of the alleged Government conduct.  They discuss at length why (in their view) the inclusion of TSDB data in the NICS Background Check is unauthorized, wrong, and even unconstitutional.  But we do not "entertain citizen suits to vindicate the public's nonconcrete interest in the proper administration of the laws."  Lujan, 504 U.S. at 581 (Kennedy, J. concurring); accord Spokeo, 136 S. Ct. at 1549 ("Article III standing requires a concrete injury even in the context of a statutory violation.").  The appellants do

5

not explain how they *themselves* have been subjected to any harm by the challenged conduct, such as the deprivation of a Second Amendment right to bear arms or a Fourth Amendment protection against unreasonable searches or breach of privacy.[2]  See Clapper v. Amnesty Int'l USA, 568 U.S. 398, 411 (2013)(holding that plaintiffs unable to allege that their communications were actually monitored under challenged statute lacked standing); see also Am. Civil Liberties Union v. Nat'l Sec. Agency, 493 F.3d 644, 665-66, 673 (6th Cir. 2007)(opinion of Batchelder, J.).[3]

---

[2] For the same reason, we reject the appellants' assertion that they will suffer a cognizable injury in fact because NICS forces them to "choose" between their Second and First or Fourth Amendment rights.  This is, in effect, an argument that the appellants are at risk of suffering the same constitutional harms alleged here in the future.  Since the appellants fail to demonstrate that they have been or will imminently be subject to the challenged conduct, their unsubstantiated fears of a speculative harm or a 'chill' on Second Amendment activity are insufficient to confer standing.  See Clapper v. Amnesty Int'l USA, 568 U.S. 398, 416 (2013); Laird v. Tatum, 408 U.S. 1, 13-14 (1972) ("Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm.").

[3] Appellants argue that they have been suffering injury because the Government has exceeded its statutory authority and incorporated the TSDB into the NICS Background Check.  In appellants' view, comparing their Form 4473 information against a database incorporating the TSDB—standing alone—is a cognizable injury.  Appellants' theory of harm, however, is incongruous.  The Brady Act provides the Government with the authority to access any search criteria that will enable it to determine whether a prospective purchaser is prohibited by the Gun Control Act from purchasing a firearm.  See Brady Act, Pub. L. No. 103-159, § 103(e)(1), 107 Stat. 1536, 1542 (1993).  Incorporating the TSDB into the NICS Background Check protocol is merely one method that the Government may use to determine whether a prospective purchaser possesses a disqualifying attribute.  Appellants therefore fail to identify how the Government's search procedure causes them injury.  See Bauer v. Veneman, 352 F.3d 625, 636-37 (2d Cir. 2003) ("While the standard

There is no evidence that any of these appellants were unable to purchase a firearm, were delayed in purchasing a firearm, or were listed on the TSDB such that their information was allegedly compromised.[4] At most, the complaint articulates "a highly attenuated chain of possibilities" that could, in combination with a number of unpled facts, perpetrate the alleged constitutional harm. Clapper v. Amnesty Int'l USA, 568 U.S. 398, 410 (2013); see also Summers, 555 U.S. at 495-96. The standing of the appellants cannot be inferred from the speculative theory that were they to appear on the TSDB, their Form 4473 information might cross-reference to a file on the NCIC, which could result in a delay or denial in their transaction. See Clapper, 568 U.S. at 413-14 (declining to endorse a standing theory requiring a chain of speculation).

The appellants also argue that they are harmed by the perceived stigma of the association of gun owners with terrorists. They posit that the inclusion of a TSDB file in one of the databases cross-referenced by the NICS Background Check amounts to labeling all gun owners as terrorists, and thereby creates a direct reputational injury. See Allen v. Wright, 468 U.S. 737, 754-55 (1984) (stating that injury premised on stigma "accords a basis for standing only to those persons who are personally denied equal treatment by the challenged discriminatory conduct"), abrogated in part on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377 (2014).

_____

for reviewing standing at the pleading stage is lenient, a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing.").

[4] The individual appellants are joined by several non-profit corporations and unincorporated associations. Since the organizational appellants' standing can only be sustained as an extension of the standing of individual members, their claims must also fail. See Sierra Club, 405 U.S. at 733-34.

As the Government points out, this argument is facially incoherent as it suggests that the (unchallenged) criminal background checks done under the Brady Act brand all gun owners as felons or sexual miscreants.  More importantly, a valid theory of stigmatizing injury rests on discriminatory conduct within a defined class of persons, not an "abstract stigmatic injury" affecting all gun owners.  In re U.S. Catholic Conference (USCC), 885 F.2d 1020, 1025 (2d Cir. 1989) (quoting Allen, 468 U.S. at 755-56).  Like the plaintiff clergy in In re U.S. Catholic Conference, the appellants' "self-perceived 'stigma' does not amount to a particularized injury in fact" because they "have neither been personally denied equal treatment under the law nor in any way prosecuted by" any government agency.  Id. at 1026.

For the foregoing reasons, and finding no merit in Robinson's other arguments, we hereby **AFFIRM** the judgment of the district court.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

8